1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  YELLOWCAKE, INC., a California corporation, | Case No. 1:20 -CV-00787-JLT-BAM |
| 12 | |
| 13              Plaintiff, | ORDER DENYING PLAINTIFF COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| 14         v. | |
| 15  MORENA MUSIC, INC., a California corporation; EDUARDO LEON, d/b/a LONG PLAY MUSIC; and DOES 1-50, inclusive, | (Doc. 86) |
| 16 | |
| 17              Defendants. | |
| 18 | Case No. 1:20 -CV-00787-JLT-BAM |
| 19  MORENA MUSIC, INC., | |
| 20              Counterclaimant, | OREDER DENYING DEFENDANT COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT |
| 21         v. | |
| 22  YELLOWCAKE, INC., a California Corporation; COLONIZE MEDIA, INC.; and JOSE DAVID HERNANDEZ, | (Doc. 87) |
| 23 | |
| 24              Counter-Defendants. | |

25  ///
26  ///
27  ///
28

                              1

This is a copyright dispute involving three musical albums by the artist Los Originales De San Juan.  Before the Court are the plaintiff counter-defendants and defendant counterclaimant's motions for summary judgment (Docs. 87, 87.)  For reasons thoroughly discussed below, the Court finds summary judgment unwarranted and precluded.  Accordingly, Plaintiff Counter-defendants Yellowcake's motion for summary is denied and Defendant Counterclaimant Morena's motion for summary judgment is denied.

## BACKGROUND

### A.  Procedural Posture

Yellowcake, Inc. initiated suit against Morena Music, Inc. and Eduardo Leon, d/b/a Long Play Music by filing a complaint alleging copyright infringement, contributory infringement, and requesting injunctive relief.  (Doc. 1.)  The defendants filed an Answer (Doc. 12) and initial countercomplaint against Yellowcake Music, Inc., Colonize Media, Inc., and Jose David Hernandez (collectively "counter-defendants") on September 1, 2020 (Doc. 13).  In response, counter-defendants filed a motion to dismiss Morena's countercomplaint.  (*See* Doc. 19.)  This Court issued an order granting counter-defendants' motion, in part, and permitting counterclaimant Morena time to file an amended countercomplaint (*see* Doc. 31).  In addition to allowing leave to amend, the Court ordered Morena to file supplemental briefing "that addresses and responds to the arguments made in Counter-defendants reply brief concerning the validity of Morena's copyright registrations in the three albums."  (*See* Doc. 31 at 35.)  Though untimely, the Court considered Morena's supplemental briefing (Doc. 34), and the responsive briefing submitted by counter-defendants (Doc. 37).  The Court addressed the supplemental briefing (Doc. 43) on May 5, 2021, by determining that "The Register of Copyrights will be contacted to determine whether Morena Music's three copyrights would have been registered if the inaccuracies had been known to the Register at the time of registration."  (Doc. 43 at 4.)  (*See also* Docs. 49, 50.)

On March 23, 2021, Defendant-counterclaimant Morena ("Counterclaimant") filed a first amended countercomplaint (Doc. 36) alleging direct infringement as to the Los Originales Albums and direct infringement as to the Los Originales Cover Art against Yellowcake and

1  Colonize with the following claims for relief: temporary, permanent, and injunctive relief,

2  intentional interference with prospective business advantage and contractual relations, unfair

3  competition under California business and professions code, and conversion  (*see generally* Doc.

4  36), and counter-defendants filed its second motion to dismiss (Doc. 41) on April 23, 2021.

5  Counterclaimant timely replied (Doc. 42) and counter-defendants' reply (Doc. 46) followed.  On

6  August 2, 2021, the Court issued an Order granting counter-defendants' second motion to dismiss

7  (Doc. 54) as follows: "the first and third counterclaims are dismissed without leave to amend;

8  [Morena] may filed a second amended counterclaim that adds a claim for an accounting; . . .

9  Counter-defendants' motion for Rule 11 sanctions is Denied."

10  On August 16, 2021, Counterclaimant filed its second amended countercomplaint (Doc.

11  55) against counter-defendants alleging copyright infringement as to the Los Originales Cover

12  Art and accounting.  (*See* Doc. 55.)  Counter-defendants timely filed its Answer (Doc. 56).[1]

### B. Counter-defendants Offer of Judgment

14  Pursuant to Federal Civil Procedure Rule 68, Counter-defendants "offered to allow

15  judgment to be taken against them" on Defendant-Counterclaimant Morena's "First Claim for

16  Copyright Infringement under 17 U.S.C. 805, et seq. as to the *Los Originales* Cover Artwork . . .

17  for the sum, including costs now accrued and attorneys' fees, of Five Thousand Dollars

18  ($5,000.00) [;]" under the terms that "[t]his offer of judgment is made for the purposes specified

19  in Rule 68, and is not to be construed either as an admission that any of the Counter-defendants

20  are liable in this action, or that the Counterclaimant has suffered any damage."  (Doc. 80 at 6.)

21  Rule 68 states, "at least 14 days before the date set for trial, a party defending against a claim may

22  serve on an opposing party an offer to allow judgment on specified terms, with the costs then

23  accrued.  If, within 14 days after being served, the opposing party serves written notice accepting

24  the offer, either party may then file the offer and notice of acceptance, plus proof of service."

25  Fed. Civ. P. 68.  On March 10, 2023, Defendant-Counterclaimant Morena Music, Inc. accepted

26  Counter-defendants offer to allow Judgment (*see* Doc. 80 at 1) and Satisfaction of Judgment

27  (Doc. 80) was entered on March 31, 2023.

28

---

[1] On October 6, 2023, the pending matter was ordered to be RELATED and reassigned.  (Doc. 97.)

**C. The Parties' Cross-Motions for Summary Judgment**

On May 19, 2023, both parties filed motions for summary judgment. Plaintiff Counter-defendants (collectively "Yellowcake") moved for summary judgment on its claims for copyright infringement and contributory infringement and Defendant Counterclaimant Morena's (collectively "Morena") accounting claim. (Doc. 86.) Morena filed a cross-motion for summary judgment on Yellowcake's infringement claims (Doc. 87.) The parties timely filed oppositions (Docs. 92, 91) and replies (Docs. 93, 95, 94). The Court considers both parties motions below.

## STANDARD OF DECISION

Federal Civil Procedure Rule 56(a) requires the Court to grant summary judgment as to any claim or defense when the movant, by citing to specific materials in the summary judgment record, shows there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *see Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247- 48 (1986). A general dispute exists if a rational factfinder considering the evidence in the record, could find in favor of the non-moving party. *Id.* at 248-9. A fact is material if, under the substantive law governing the claim or defense at issue, the fact might affect the outcome of the case. *Id.* at 248.

In evaluating a party's motion for summary judgment, the Court's role is narrowly limited to assessing the threshold issue of whether a genuine dispute exists as to material facts requiring trial. The court never weighs evidence or finds facts. *See Anderson*, 477 U.S. at 255. The Court "view[s] the facts and draw reasonable inferences in the light most favorable" to the nonmoving party, without making credibility determinations or weighing conflicting evidence. *See Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). A party is entitled to summary judgment "only if, taking the evidence and all reasonable inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law." *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (quoting *Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019)).

1    The party moving for summary judgment bears the initial burden of identifying the

2    materials in the summary judgment record, including portions of the pleadings, discovery and

3    disclosures on file, and affidavits, that demonstrate the absence of a genuine issue of material

4    fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-moving party has the

5    burden of proof at trial, the movant may carry its burden by merely pointing out that there is "an

6    absence of evidence" in support of the non-moving party's claims or defenses. *Id.* at 325. If the

7    movant carries its initial burden, the burden of going forward shifts to the non-moving party to

8    show a genuine dispute of material fact remains for the factfinder to resolve. *Id.* at 324. The non-

9    moving party must go beyond the pleadings and show adequately probative evidence-by its own

10   affidavits or discovery- set forth specific facts creating a genuine issue for trial. *Id.*; *Matsushita

11   Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]here is no issue for trial

12   unless there is sufficient evidence [supporting] the non-moving party" to the extent that a jury

13   could return a verdict in its favor. *Anderson*, 477 U.S. at 249. "In determining whether the non-

14   moving party has presented sufficient evidence to proceed to trial, the Court is bound by the

15   traditional allocation of function between judge and jury." *Id.* at 255. Credibility determinations

16   and the weighing of the evidence are functions of a jury, not a judge. *Id.* If the non-moving party

17   does not produce evidence to show a genuine dispute as to a material fact, the moving party is

18   entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

19   In ruling on a motion for summary judgment, inferences drawn from the underlying facts

20   are viewed in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

21   Thus, when parties file cross-motions for summary judgment, the Court "evaluate[s] each motion

22   separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."

23   *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006). The Court considers

24   each party's cited evidence, "regardless under which motion the evidence is offered." *Las Vegas

25   Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

26   **A. Judicial Notice**

27   The court may take judicial notice of facts not subject to reasonable dispute because they

28   are either: (1) generally known within the trial court's territorial jurisdiction, or (2) capable of

5

accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).  If the content of the document is subject to varying interpretations, then there is no fact "not subject to reasonable dispute," and the fact does not qualify for judicial notice.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018).

## I.    PLAINTIFF COUNTER-DEFENDANT YELLOWCAKE'S MOTION FOR SUMMARY JUDGMENT

Yellowcake moves for summary judgment on its copyright infringement claims arguing Morena's "three varying claims for co-ownership all fail."  (Doc. 86 at 24.)  Specifically, Yellowcake requests the Court grant summary judgment on its first and third cause of actions for copyright infringement against Defendants and contributory infringement against Leon; "issue judgment holding Morena and Leon are joint and severally liable to [Plaintiff] for damages in the amount of $247,000;" "issue a[] permanent injunction pursuant to 17 U.S.C. § 502 prohibiting Morena, Leon or any of their employees or agents from exercising any of the rights provided by 17 U.S.C. § 106 with regards to the Albums;" and grant its motion for summary judgment on Morena's second counterclaim for common law accounting.  (*Id.* at 34.)

Morena opposes summary judgment arguing "Yellowcake has not met its burden of proof as to ownership" because "both Flores and Vargas were co-owners of all rights in the Albums from the outset, and they never transferred their rights to Chavez [;]" and "Morena, via its involvement in each Albums' production, also has a co-ownership claim."  (Doc. 92 at 10.)  In response to Yellowcake's accounting arguments, Morena contends it is entitled to an accounting because it is a co-owner of the Albums.  (*Id.* at 28 (Morena states, both parties "appear[] to concede via the Motion that an accounting is a proper remedy-arguing only that Defendants are not entitled to such a remedy because Morena is not a co-owner of the Albums.").)  Morena also contends "Colonize and Hernandez are obligated to account to Morena" because they "were alter egos of Yellowcake at all relevant times" and "were in a position to have unjustly profited from the exploitation of the Albums [;]" thus, "have a duty to account."  (*Id.* at 29.)

///

# FACTUAL BACKGROUND

## A. Undisputed Facts

In their separate statements of undisputed facts and in their responses (*See generally* Docs. 86, 92), the parties agreed that the following facts are undisputed:

1. Between 2013 and 2015, the Los Originales de San Juan (the "Band") recorded three albums titled: (i) *Los Originales de San Juan 50 Mentadas*; (ii) *Los Originales De San Juan 15 Corridos Inmortales*; and (iii) *Los Originales de San Juan Celebrando 39* (the "Albums"); and the three Albums were recorded digitally.

2. Hector Rosales ("Rosales") acted as the audio engineer for the Albums.

3. Defendant Eduardo Leon ("Leon") is the chief executive officer and owner of Morena Music, Inc.

4. Plaintiff Counter-defendant Yellowcake, Inc. ("Yellowcake") is primarily engaged in the business of exploiting various intellectual property rights.

5. Counter-defendant Jose David Hernandez ("Hernandez") is a principal of Colonize Media, Inc.

6. In the Assets Purchase and Assignment Agreement, Chavez represented that he owned all rights transferred to Yellowcake therein.

7. Shortly thereafter, in or about November 2019, Yellowcake filed "Takedown Notices" pursuant to 17 U.S.C. § 512 *et seq*. through YouTube claiming ownership of the songs and notified Morena's distributor, The Orchard, that Morena was infringing Yellowcake's copyrighted Albums.

8. This Court already took judicial notice of Yellowcake's copyright registrations in the Albums in its previous Order dated March 1, 2021.   (*See* Doc. 31 at 5, n. 1.)

9. Morena admitted to receiving the following gross amounts for the exploitation of each Album: (i) "*50 Mentadas* – approximately $182,000"; (ii) "*15 Corridos Inmortales*– approximately $27,000", and (iii) "*Celebrando 39* –approximately $38,000."  As such, Yellowcake is entitled to $182,000 in profits for the Album *50 Mentadas*; $27,000 for *15 Corridos Inmortales* and $38,000 for *Celebrando 39* for a total of $247,000 in damages

7

1    from Morena.

2        Based on this Court's prior Orders (Doc. 31, 54), the Court finds and strictly adopts the

3    following fact as undisputed: Yellowcake and bandmember Jesus Chavez ("Chavez") entered into

4    an Assets Purchase and Assignment Agreement ("APA") wherein Yellowcake purchased

5    Chavez's ownership interest and rights in the Band's sound recordings, which included the three

6    Albums.  The Court's finding is limited and only serves to establish the following as undisputed:

7    (1) Yellowcake and Chavez entered into an APA agreement; (2) Chavez intended to transfer his

8    ownership interest and rights in the Band; (3) Yellowcake purchased Chavez's ownership interest

9    and rights; and (4) Chavez transferred its ownership interest and rights to Yellowcake.  (*See* Doc.

10   31 at 12 stating, "There is no dispute that Chavez entered into a written transfer agreement with

11   YCH.  See Complaint at Ex. A; Counterclaim ¶¶ 21, 22.")  The Court's finding does not extend,

12   include, or apply to the specific terms within the APA, as there is clear dispute surrounding the

13   APA language.  (*See* Doc. 92 at 11, Defendant's Disputed Facts 16, *see also* at 6-7.)  Nor does the

14   Court's finding address or infer validity of the APA.

15       **B.  Judicially Noticed Documents**

16       This Court previously issued Orders (Docs. 31, 54) resolving Yellowcake's motions to

17   dismiss (Docs. 19, 41) and within granted judicial notice of the three Albums' "registration

18   information from the U.S. Copyright Office's Online Catalog."  (*See* Doc. 31 at 4, n. 1 "Exhibits

19   A, B, and C of the Berman Reply Declaration are copies of registration information from the U.S.

20   Copyright Office's Online Catalog regarding the three albums.  The Court takes judicial notice of

21   these governmental records.") Likewise, the Court takes judicial notice of the previous orders

22   (Docs. 31, 54) and the government records judicially noted within.  *See* Fed. R. Evid. 201; *Basile*

23   *v. Tweitieth Century Fox Film Corp.*, 678 F. App'x 576, 577 (9th Cir. 2017); *Sybersound*

24   *Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008); *Kaseberg v. Conaco, LLC*, 360

25   F.Supp.3d 1026, 1029 n.2 (S.D. Cal. 2018); *Obodai v. YouTube LLC*, 840 F.Supp.2d 714, 715 n.1

26   (S.D. N.Y. 2011).

27       **C.  Evidentiary Objections**

28       Pursuant to L.R. 260(a)-(b), both parties filed evidentiary objections and responses in

8

1    support of, and in opposition to, Yellowcake's motion for summary judgment (Doc. 86).  (*See*

2    *also* Docs. 94, 96.)

3        A party may object that the material used to "dispute a fact cannot be presented in a form

4    that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  In evaluating the merits of a

5    motion for summary judgment, a court may only consider admissible evidence.  Fed. R. Civ. P.

6    56.  "A court must rule on material evidentiary objections."  *Norse v. City of Santa Cruz*, 629

7    F.3d 966, 973 (9th Cir. 2010).  At the summary judgment stage, district courts consider evidence

8    with content that would be admissible at trial, even if the form of the evidence would not be

9    admissible at trial.  *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20

10    (E.D. Cal. 2006) (even if evidence is presented in form that is currently inadmissible, it may be

11    considered on motion for summary judgment so long as admissibility defects could be cured at

12    trial); *Sali Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) ("the court must review

13    the evidence in light of what would be admissible before either the court or jury" [citation

14    omitted]).

15        a.  Yellowcake's Objections

16        In Yellowcake's response (Doc. 94) to Morena's Separate Statement of Undisputed Facts

17    (Doc. 92-1), Yellowcake acknowledges "no response is required to the Additional Undisputed

18    Material Facts (AUMF) [but] hereby (i) dispute the purported statements of facts set forth in the

19    AUMF; (ii) object to the statements of fact because they mischaracterize, misrepresent or are

20    unsupported by the purported evidence they are based upon; (iii) object to the purported evidence

21    underlying such statements because such evidence constitutes inadmissible conclusions of law,

22    conclusory statements and/or hearsay, or is otherwise inadmissible; and (iv) respectfully refer the

23    Court to their Statement of Undisputed Facts (Doc. 86-24)" and the opposition (Doc. 91-1)[2] filed

24    in opposing Counterclaimant's motion for summary judgment (Doc. 87).  (*see* Doc. 94 at 2.)

25        Yellowcake's objections are to Morena's statement of undisputed facts (Doc. 92-1) and

26    premised on questions of relevancy and materiality.  The Court does not rely on irrelevant

27

28    [2]  Yellowcake refers to the document as "Response to Defendants' Separate Statement of Undisputed Facts (Doc. 91-1) in opposition to Defendants' motion for summary judgment.

evidence when evaluating motions for summary judgment, and objections premised on relevancy are redundant and "duplicative of the summary judgment standard itself." *Burch*, 433 F.Supp.2d at 1119. "A court can award summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, . . . thus relevance objections are redundant" to the practice of summary judgment and unnecessary to consider in the context summary judgment. *Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."); *see also US E.E.O.C. v. Placer ARC*, 114 F. Supp. 3d 1048, 1052 (E.D. Cal. 2015). Accordingly, Yellowcake's objections to evidence on the grounds that it constitutes an improper legal conclusion are duplicative and improper for summary judgment and cannot be sustained on these grounds. *Burch*, 433 F.Supp.2d at 1119. These objections are **OVERRULED.**

The Court also declines to consider Yellowcake's objections to the "mischaracterization" or "misrepresentation" of the evidence represented because the "objections should be directed at the evidence supporting [the] statements." *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic*, Inc., 556 F.Supp.2d 1122, 1126 n.1 (E.D. Cal. 2008). To the extent Yellowcake argues any declarant's statements misstate the evidence, those objections also are **OVERRULED** as "go[ing] to the weight of the evidence, not the admissibility of the testimony." *Galvan v. City of La Habra*, No. SACV 12–2103, 2014 WL 1370747, at *4 (C.D. Cal. 2014); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F.Supp.2d 1023, 1034 (C.D. Cal. 2013).

As for Yellowcake's general objection on the grounds of hearsay, the Court finds Yellowcake fails to identify which evidence constitutes hearsay or articulate reasons to support the objection. Nevertheless, the Court "may not grant a summary judgment motion on the basis of hearsay evidence, but it may deny a summary judgment motion on the basis of hearsay evidence as long as it finds that the hearsay evidence would be admissible at trial." *See* Fed. R. Civ. P. 56(e); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Thus, any hearsay objections are **OVERRULED**.

      b.  <u>Morena's Objections</u>

Morena objects to the "brand new, third-party witness declarations and exhibits attached" in support of Yellowcake's Reply (Doc. 93) to Morena's Opposition (Doc. 92). (*See generally*

1   Doc. 96 at 2.)  Morena contend Yellowcake's Reply and supporting documents contain "new

2   evidence and new arguments never raised in their moving papers."  (*Id.*)  For example, "Counter-

3   defendants appear to attach, as an Exhibit to a newly introduced Declaration from Jesus Chavez

4   Sr., an un-bates-stamped document that was never produced in discovery."  (*Id.* at 3.)  Ultimately

5   Morena argues "such improperly added, previously undisclosed, new evidence" violates Rule 26

6   Initial Disclosure obligations.  (*Id.*)  Accordingly, "any new arguments in their Reply brief based

7   upon improperly introduced, new declarations must be stricken, as those arguments have been

8   **waived**."  (*Id.*)  Morena cites Ninth Circuit cases *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir.

9   2010) and *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

10          Federal Civil Procedure Rule 26(a) requires a party, "without awaiting a discovery

11   request, provide . . . the name of each individual likely to have discoverable information that the

12   disclosing party may use to support" a pretrial motion.  *San Francisco Baykeeper v. W. Bay*

13   *Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011); Fed. R. Civ. P. 26(a)(1)(A)(i); *see also*

14   Adv. Comm. Notes to 2000 Amendment to Fed. R. Civ. P. 26(a)(1).  Despite the requirement,

15   mandatory early disclosure is limited to information reasonably available to the party which

16   includes information known to a party and information obtainable through reasonable

17   investigation.  Fed. R. Civ. P. 26(a)(1)(E); *see* Adv. Comm. Notes to 1993 Amendment to Fed. R.

18   Civ. P. 26(a).  Moreover, a party need not produce documents at the time of making their Rule 26

19   disclosure.  *Id*.  Rather, "a description by category" suffices.  *Id*.

20          Yellowcake does not directly respond to the alleged nondisclosure or proffer any

21   explanation for the new arguments raised in its Reply (Doc. 93.)  Accordingly, the Court does not

22   consider the new arguments raised in Yellowcake's Reply (Doc. 93).  Morena identifies the "un-

23   bates-stamped" "newly introduced Declaration from Jesus Chavez Sr.," as never being produced

24   during discovery and Yellowcake does not respond. Despite this dispute, the Court does not rely

25   on the objected evidence in reaching its ruling and, so, declines to rule on Morena's objection.

26                                        **DISCUSSION**

27          Yellowcake claims it is entitled to summary judgment on its claims for copyright

28   infringement and contributory infringement because the evidence clearly shows Yellowcake is the

                                              11

1   exclusive owner of the copyrighted Albums, and Morena infringed upon its copyrighted Albums

2   by exploiting the exclusive rights granted to Yellowcake under 17 U.S.C. § 106.  (*See generally*

3   Doc. 86 at 19-12.)  Yellowcake contends Jesus Chavez was the sole author of the Albums, and

4   the APA Agreement shows Yellowcake "purchased Chavez's entire ownership of the rights, title,

5   and interest in the Albums."  (Doc. 86 at 18.)  Yellowcake asserts the United States Copyright

6   Office's (USCO) issued Certificates of Registrations for the Albums further establish Yellowcake

7   "is the undisputed owner of the Albums" and Morena exploited the Albums by "distributing

8   videos . . . of the sound recordings on YouTube [and] selling the Albums on multiple digital

9   distribution platforms."  (*Id.* at 19.)  Yellowcake explains, after the lawsuit commenced, "Morena

10   admitted in its initial interrogatory responses and supplemental interrogatory responses that it

11   exploited the Albums in direct violation of Yellowcake's exclusive rights. . .  by selling the

12   Albums on multiple digital service providers through its secondary distributor, The Orchard [;]"

13   and documents produced and subpoenaed show "Morena continued to sell copies of the Albums

14   after receiving the Takedown Notices from YouTube."  (*Id.* at 20.)  Moreover, Morena admitted

15   "it also created and uploaded videos which were unauthorized derivative works of Yellowcake's

16   copyrighted sound recordings to www.YouTube.com," and "[t]he upload of the Infringing videos

17   to YouTube itself constitutes an act of direct infringement of the Copyrighted Works."  (*Id.*)  As a

18   result of the alleged infringement, Yellowcake contends it is entitled to the following in damages:

19   "$182,000 in profits for the Album *50 Mentadas*; $27,000 for the Album *15 Corridos Inmortales*,

20   and $38,000 for the Album *Celebrando 39*" totaling $247,000.00.  (*Id.* at 21.)

21        In response to Yellowcake's alleged ownership, Morena contends "Chavez was not, and

22   could not be, anything more than a co-author of the Albums" because Chavez's bandmates

23   Domingo Torres Flores (Flores) and Alfonso Vargas (Vargas) made "creative, copyrightable

24   contributions to the Albums" and assisted in the creation of the Albums.  (Doc. 92 at 10.)  Morena

25   asserts Flores and Vargas's musical contributions surpassed Chavez's because they performed the

26   accordion and drums, "musical elements that are critical to the particular genre of music at issue,"

27   while Chavez only sang.  (*Id.* at 10-11.)  Moreover, "Chavez, Flores and Vargas's 'collaboration'

28   is well established, by virtue of their equal ownership and control of the Group, their equal

1    crediting as members of 'Los Orignales de San Juan,' and their creative contributions to the

2    Albums." (*Id.* at 11.) As a result, the Albums constitute "joint work" under the Copyright Act

3    rendering Chavez, Flores, and Vargas co-authors and co-owners of the Albums.

4          The parties do not dispute "Yellowcake filed Takedown Notices pursuant to

5    17 U.S.C. § 512 through YouTube claiming ownership of the songs and notified Morena's

6    distributor, The Orchard, that Morena was infringing Yellowcake's copyrighted Albums [;]" and

7    "Morena admitted to receiving the following gross amounts for the exploitation of each Album:

8    (i) *50 Mentadas* – approximately $182,000, (ii) *15 Corridos Inmortales*– approximately $27,000,

9    and (iii) "*Celebrando 39* –approximately $38,000. As such, Yellowcake is entitled to $182,000

10   in profits for the Album *50 Mentadas*; $27,000 for *15 Corridos Inmortales* and $38,000 for

11   *Celebrando 39* for a total of $247,000 in damages from Morena." (*See* Doc. 86-24 at 6-7, Doc.

12   92-1 at 13-14.)

13         For reasons discussed below, the Court finds genuine disputes remain for the jury to

14   resolve and **DENIES** Yellowcake's motion for summary judgment on its claims for copyright

15   infringement and contributory infringement.

16        **A.** **The Court's Prior Orders**

17         Before addressing the merits and individual arguments raised by the parties, the Court

18   finds it noteworthy to discuss two prior Orders (Docs. 31, 54) issued in the ongoing litigation as

19   both orders are relevant to the pending issues now before the Court. The Court's rationale in

20   granting in part, Yellowcake's first motion to dismiss clearly acknowledges and anticipates

21   genuine disputes as to copyright ownership exists. (*See* Doc. 31 at 12 "Therefore, the agreement

22   between Chavez and YCH[3] could have transferred Chavez's interests in the album to YCH. The

23   ultimate result would be that Morena is now a joint owner of the copyrights in the albums with

24   YCH." Since "[o]ne joint owner of a copyright cannot sue another joint owner of a copyright for

25   copyright infringement . . . Morena's theory of co-authorship/joint ownership defeats its claim of

26   copyright infringement because the other joint owner is Yellowcake.") Unless all co-owners/co-

27   ───────────────

28   [3] The Court's prior Orders (Docs. 31, 54) referred to Counter-Defendants Yellowcake, Inc., Colonize Media, Inc., and Jose Hernandez collectively as "YCH."

1    authors of a "joint work" join in granting an exclusive license, a single co-author (acting on its

2    own behalf) can grant only a non-exclusive license in the copyright work because one co-author

3    cannot limit the other co-authors' independent right to exploit the copyright. *Sybersound*, 517

4    F.3d at 1146. Similarly, the Court's second order (Doc. 54) granting Yellowcake's motion to

5    dismiss Morena's counterclaim for copyright infringement are premised upon disputed

6    ownership. The Court briefly explained its prior dismissal order (Doc. 31), stating,

7
8
9
10
11
12

> the Court recognized that there was no dispute that Chavez entered into a written transfer agreement with Yellowcake and that, while Chavez as a co-owner could not transfer exclusive interests, he could transfer his own ownership interest. The Court recognized that if Morena is a joint owner, the effect of the transfer agreement between Morena and Chavez was to make Morena and Yellowcake joint owners of the copyrights. Therefore, the fact that Chavez could not transfer an exclusive license if he was merely a co-owner does not mean that Yellowcake is not at least a co-owner of the copyright with Morena.

13    (*Id.* at 5.) (*See also id.* at 11 "The end result is that Chavez has no more exclusive rights in the

14    copyrights, is no longer an owner of the copyrights, and that (crediting Morena's allegations in

15    this Rule 12(b)(6) motion) Morena and Yellowcake are co- owners of the copyrights. Since co-

16    owners cannot be liable to each other for copyright infringement, . . . dismissal of the first cause

17    of action is appropriate.") Hence the Court's reasoning in allowing Morena to file a second

18    amended countercomplaint alleging accounting. "This is the second time that the Court has

19    dismissed the co-owner theory of copyright infringement because the allegations and judicially

20    noticeable documents indicated that Morena and Yellowcake were co-owners. Therefore,

21    dismissal will be without leave to amend at this time." (*Id.*) However, "because co-owners are

22    required to account to each other for their use of a co-owned copyrights, the Court will permit

23    Morena to file an amended counterclaim that includes a claim for an accounting against

24    Yellowcake." (*Id.*) Though the standards differ, a motion to dismiss challenges the legal

25    sufficiency of a case whereas a motion for summary judgement challenges the factual basis of a

26    case after discovery, the prior orders highlight pleading deficiencies and opine relevant analysis

27    and reasoning. The Court would be remiss to disregard relative guidance.

28

1

**LEGAL STANDARD**

2        "The Copyright Act affords copyright owners the 'exclusive rights' to display, perform,

3  reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and

4  to prepare derivative works based upon the copyrighted work." *Maloney v. T3Media, Inc.*, 853

5  F.3d 1004, 1010 (9th Cir. 2017); *see* 17 U.S.C. § 106.  Only the "legal or beneficial owner of an

6  exclusive right under a copyright" has standing to sue for infringement of that right.  *Righthaven*

7  *LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013).  Though one can own a copyright and have

8  property rights in a work without a registration, the owner needs to register the copyright before

9  he can sue for infringement.  *See* 17 U.S.C. §§ 408(a), 411(a); *Gold Value Int'l Textile, Inc. v.*

10  *Sanctuary Clothing, Ltd. Liab. Co.,* 925 F.3d 1140, 1144 (9th Cir. 2019); *Alaska Stock, LLC v.*

11  *Houghton Mifflin Harcourt Publ'g Co.,* 747 F.3d 673, 678 (9th Cir. 2014).

12        To prevail on a copyright infringement claim, a plaintiff must show "(1) ownership of the

13  allegedly infringed work and (2) copying of the protected elements of the work by the defendant.

14  *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991); *Feist Publ'ns, Inc. v. Rural Tel.*

15  *Serv. Co.*, 499 U.S. 340, 351 (1991); *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th

16  Cir. 2019).  "To plead ownership, [a plaintiff] must plausibly allege it owns a valid copyright

17  registration for its works."  *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th

18  Cir. 2019).  There is a presumption of copyright validity and ownership if there is a certificate of

19  registration from the United States Copyright Office ("USCO").  *Pasillas*, 927 F.2d at 442

20  (quoting *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017)).  A certificate

21  from the U.S. Register of Copyrights "constitute[s] prima facie evidence of the validity of the

22  copyright." 17 U.S.C. § 410(c).  A plaintiff may meet the second element of copying by

23  demonstrating that "(a) the defendant had access to the allegedly infringed work and (b) the two

24  works are substantially similar in both idea and expression of that idea."  *Pasillas*, 927 F.2d at

25  442

26   **A.  Copyright Infringement: Ownership**

27        Yellowcake contends it is the exclusive owner of the copyrighted Albums pursuant the

28  APA Agreement with Chavez "whereby Yellowcake . . . purchased Chavez's entire ownership of

1   the rights, title and interest in the Albums." (Doc. 86 at 18.) Yellowcake also contends its

2   "ownership of the copyrighted works is further evidence" by the fact Yellowcake registered the

3   alleged acquired copyrights for the Albums and obtained USCO Certificates of Registration. (*Id.*

4   at 19.)

5               a.   Genuine Dispute as to Material Fact

6       The parties do not dispute the Court's judicial notice of Yellowcake's registration in its

7   prior order (Doc. 31). Nor do the parties dispute the Albums are sound recordings and original

8   works of authorship constituting copyrightable subject matter. 17 U.S.C. § 102(a)(7). However,

9   just as the prior dismissal orders (Docs. 31, 54) anticipate, the summary judgment record presents

10  disputes of material facts. Specifically, disputes of copyright ownership. In opposing summary

11  judgment, Morena argues "Yellowcake has not met its burden of proof as to ownership" and

12  proffers three co-author/co-owner arguments premised on the Albums being a joint work. (*See*

13  *generally* Doc. 92.) The Court considers the parties' counterarguments and responses below to

14  assess whether the disputes are genuine.

15      As to its motion, Yellowcake has the burden to prove its copyright ownership in the three

16  Albums. *Flesicher Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 962 (9th Cir. 2011). A

17  certificate from the U.S. Register of Copyrights "constitute[s] prima facie evidence of the validity

18  of the copyright." 17 U.S.C. § 410(c). Yellowcake has met its burden of showing prima facie

19  evidence of ownership by presenting USCO issued Certificates of Registration for the Albums.

20  Therefore, the burden shifts to Morena to "rebut[ ] the facts set forth in the copyright certificate."

21  *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011). "'To rebut the

22  presumption [of validity], an infringement defendant must simply offer some evidence or proof to

23  dispute or deny the plaintiff's prima facie case of infringement.'" *Id.*

24      Morena contends Yellowcake "has not met its burden of proof as to ownership" because

25  Chavez did not "own all intellectual property" "prior to Yellowcake's purported acquisition of the

26  Albums." (Doc. 92 at 10.) Morena rebuts Yellowcake's presumed exclusive ownership arguing

27  the Albums constitute a "joint work." (*See generally id.* at 10-15.) A "joint work" is a work

28  prepared by two or more authors with the intention that their contributions be merged into

1    inseparable or interdependent parts of a unitary whole. 17 U.S.C.A. § 101. As a result,

2    Bandmates "Flores and Vargas were co-owners of all rights in the Albums from the outset, and

3    they never transferred their rights to Chavez." (Doc. 92 at 10.) Morena also asserts its

4    "involvement in each Albums production" makes Morena a co-owner as well. (*Id.*)

5                    *i.  Co-author/Co-owner: Bandmates Flores and Vargas*

6          Morena contends Yellowcake has not met its burden of proof in showing Chavez was the

7    sole owner of the Albums. (Doc. 92 at 10.) Morena contends bandmates Domingo Torres Flores

8    ("Torres") and Alfonso Vargas ("Vargas") were co-authors of the Albums and "Chavez, Flores

9    and Vargas's "collaboration" is well established, by virtue of their equal ownership and control of

10   the Group, their equal crediting as members of "Los Orignales de San Juan," and their creative

11   contributions to the Albums." (*Id.* at 11.) Moreover, "[t]here is also no evidence before this

12   Court (because none exists) to indicate that Flores or Vargas ever transferred any interest in and

13   to their creative contributions to the Albums to Chavez at any time for any reason." (*Id.* at 12.)

14   "[I]n the absence of any written agreements among the Group members setting forth differing

15   ownership interests (as is the case here), it is legally meritless for only one member of a band to

16   claim sole authorship of the sound recordings in dispute." (*Id.* citing *Copyright Circular* 56A,

17   *Copyright Registration of Musical Compositions and Sound Recordings*.)

18         Yellowcake asserts that the "ownership through assignment theory is refuted by the

19   record." (*Id.* at 29.) Yellowcake explains, "[t]he terms, circumstances and timing of the

20   disclosure of the alleged assignments prove . . . they have absolutely no credibility whatsoever. .

21   ." (*Id.*) For instance, (1) "both Alleged Assignments were allegedly signed on March 8, 2022,

22   but they were not disclosed . . . until October 10, 2022, well after the June 28, 2022 [,] cutoff for

23   fact discovery under the Court's initial scheduling order and only fourteen days before the

24   October 24, 2022 cutoff for filing summary judgment motions." (*Id.*) (2) "Leon was deposed on

25   April 19, 2022," and "the Alleged Assignments were executed on March 8, 2022 [yet] he made

26   no mention of these Alleged Assignments." (*Id.*)

27         Yellowcake asserts the terms of the assignments are "so suspect that the only logical

28   inference that can be drawn . . . is that they were created after the fact for the purpose of trying to

                                                    17

create a new theory of ownership." (*Id.* at 31.)  Specifically, "both Vargas and Torres allegedly assigned their alleged interests in the Albums to Morena for only one dollar ($1.00) each;" Vargas and Torres "testified that they never even read the Alleged Assignment before they executed them and did not know what they were for" and "the Alleged Assignments do not state what percentage of the Albums Vargas and Torres allegedly owned." (*Id.* at 31.)  Yellowcake also asserts that Chavez's cease and desist letter to Vargas and Torres is motive for Vargas "to help Morena with this farce." (*Id.*)  Plaintiff explains that Vargas and Torres "attempted to tour and release new music as Los Originales De San Juan through Hyphy Music, Inc. without Chavez" which resulted in Chavez sending a cease-and-desist letter. (*Id.* at 32.)  Plaintiff contends Vargas and Torres' compliance constitutes acknowledgment of Chavez's ownership of the Los Originales De San Juan trademark. Furthermore, "Morena never produced any written co-author agreement or partnership agreement amongst Chavez, Torres and Vargas, and never produced any objective evidence that there was an understanding that Vargas and Torres were coauthors with Chavez;" Vargas and Torres never filed copyright registrations or demanded royalties from Chavez from the sale of the Albums; and "Vargas nor Torres ever filed an action for declaratory judgment or otherwise against Chavez or Yellowcake claiming to be a co-owner of the Albums." (*Id.* at 32.) Yellowcake concludes, "Simply put, there is not a shred of credible objective evidence to prove that either Vargas or Torres were ever co-authors of the Albums and timing, circumstances and terms of the Alleged Assignments show that they lack any credibility." (*Id.*)

Yellowcake's arguments rely upon the Court making credibility determinations, which the Court lacks the authority to do. "In determining whether the non-moving party has presented sufficient evidence to proceed to trial, the Court is bound by the traditional allocation of function between judge and jury." *Anderson*, 477 U.S. at 255.  Credibility determinations and the weighing of the evidence are functions of a jury, not a judge. *Id.*  On the other hand, a certificate from the U.S. Register of Copyrights "constitute[s] prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c). When the plaintiff presents such evidence, as Yellowcake has done, the burden shifts to Defendants to "rebut[ ] the facts set forth in the copyright certificate."

18

1    *United Fabrics Int'l, Inc.,* 630 F.3d at 1257. "To rebut the presumption [of validity], an

2    infringement defendant [Morena] must simply offer some evidence or proof to dispute or deny

3    [Yellowcake's] prima facie case of infringement." *Id.* (internal quotations omitted.)  Morena has

4    met its burden. Yellowcake's claim of sole ownership by way of Chavez's prior exclusive

5    ownership is material disputed fact and the declarations of Flores and Vargas "establish[ing] that

6    at all relevant times, Chavez, Flores and Vargas intended that Flores and Vargas would be co-

7    authors in the Albums" create a genuine issue for the jury to resolve.  (*See* Doc. 92. at 11.)  For

8    this reason, summary judgment is precluded.  The Court **DENIES** Yellowcake's motion for

9    summary judgment on copyright infringement.

10                          *ii.   Co-author/Co-owner: Morena*

11           Morena contends it is "a co-author of the Albums, given the nature of the services Morena

12   rendered as a producer on the Albums."  (Doc. 92 at 14.)  Morena asserts "two indisputable

13   reasons" for its contention: (1) "Morena contributed more than a modicum of creativity to the

14   creation of the Albums [;]" and (2) "even if [Defendant] did not contribute enough creatively to

15   the creation of one or more of the Albums, Morena became a co-owner when it acquired all of

16   Flores and Vargas' respective interests in their creative contributions . . . [b]ecause Flores and

17   Vargas never conveyed any rights in their contributions to Chavez or Yellowcake."  (*Id.* 14-15.)

18           The Court finds Morena has carried its burden in establishing a genuine dispute of

19   material fact regarding ownership of the copyrighted Albums exists and remains for the jury to

20   resolve.  Therefore, the Court need not consider Morena's alternative argument.

21        **B.  <u>Contributory Infringement</u>**

22           Yellowcake also moves for summary judgment on its claim for contributory infringement

23   arguing Leon, the owner and principal of Morena, "is personally and contributorily liable" for

24   Defendant's infringement and seeks damages accordingly.  (Doc. 86 at 22.)  Yellowcake explains,

25   "Leon is both personally and contributorily liable to Yellowcake for damages as the principle of

26   Morena and his personal involvement and facilitation of Morena's acts of infringement."  (*Id.*)

27   ///

28   ///

                                                                    19

1

**LEGAL STANDARD**

2    The three elements required to prove a defendant liable under the theory of contributory

3   copyright infringement are: (1) direct infringement by a primary infringer, (2) knowledge of the

4   infringement, and (3) material contribution to the infringement.  *See* 17 U.S.C. §§ 501-513.  *See*

5   *also Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004); *Metro-Goldwyn-Mayer Studios, Inc. v.*

6   *Grokster Ltd.*, 545 U.S. 913, 125 (2005).

7    The Court observes that the element of direct infringement is disputed.  Accordingly, the

8   Court declines to grant summary judgment on Yellowcake's contributory infringement claim.

9   The Court also declines to consider Yellowcake's arguments regarding Morena's owner, principal

10   Leon and the alleged individual liability.

11

**CONCLUSION**

12    The Court previously found genuine dispute of material fact regarding copyright

13   ownership exist; therefore, summary judgment is inappropriate.  The Court **DENIES**

14   Yellowcake's motion for summary judgment for copyright infringement and contributory

15   infringement.

16   **C.  Accounting**

17    Yellowcake also moves for summary judgment on Morena's counterclaim for accounting

18   arguing "the evidence in the record shows that Morena is not a co-owner of the Albums" because

19   "Morena's three varying claims for co-ownership all fail."  (Doc. 86 at 22-25.)  In response to

20   Yellowcake's accounting arguments, Morena contends it is entitled to an accounting because it is

21   a co-owner of the Albums.  (*See* Doc. 92 at 28 (Morena states, both parties "appear[] to concede

22   via the Motion that an accounting is a proper remedy-arguing only that Defendants are not

23   entitled to such a remedy because Morena is not a co-owner of the Albums.").)  Morena also

24   asserts, "Colonize and Hernandez are obligated to account to Morena" because they "were alter

25   egos of Yellowcake at all relevant times" and "were in a position to have unjustly profited from

26   the exploitation of the Albums [;]" therefore, "have a duty to account."  (*Id.* at 29.)

27    The Court previously addressed the legal arguments relating to co-ownership. For the

28   reasons previously outlined, and those previously discussed above, Yellowcake's motion for

1  summary judgment on Morena's accounting claim is **DENIED**.

2                                **LEGAL STANDARD**

3          A co-owner of a copyright cannot be liable to another co-owner for infringement." *Kling*

4  *v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1034 (9th Cir. 2000) (quoting *Oddo v. Ries*, 743 F.2d

5  630, 632–33 (9th Cir. 1984)).  "The authors of a joint work are co-owners of copyright of the

6  work." 17 U.S.C. § 201.  Accordingly, co-owners are required to account to each other for their

7  use of a co-owned copyrights, *See Corbello v. Devito*, 777 F.3d 1058, 1062 (9th Cir. 2015);

8  *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 522 (9th Cir. 1990)

9                                    **DISCUSSION**

10      **A.  Ownership: Work for Hire**

11         First, Yellowcake argues Morena is not a co-owner "via a work-for-hire with Chavez."

12  (Doc. 86 at 24.)  Morena concedes explaining, "the Court has already ruled on Morena's claims to

13  the Albums on the basis of oral work-for-hire agreement(s), and this issue is no longer in dispute

14  in this case." (Doc. 92 at 16.)  The Court takes judicial notice of its previously issued order (Doc.

15  31).  Accordingly, the Court concludes the fact "Morena is not a Co-owner via a work for hire

16  with Chavez" (Doc. 86 at 24) has been established as an undisputed fact and issue.  Therefore, the

17  Court need not address the parties' arguments and finds the argument **MOOT**.

18      **B.  Ownership: Co-Author and Co-owner**

19         Yellowcake contends Morena is not a co-author with Chavez for the following reasons:

20  (1) "Rosales, the audio engineer, declared [] Chavez had complete control over the production

21  and recording of the Albums [;]" Morena's "initial counterclaims . . . admitted [] Chavez alone

22  was the original author of the albums [;]" "Morena only offered nominal artistic direction typical

23  of a record label or distributor and did not claim ownership of the Albums as a co-author." (*Id.* at

24  27.)  Yellowcake directs the Court to the alleged inconsistencies surrounding Morena's first

25  amended complaint (Doc. 36) and prior filings.  (*See generally* Doc. 86 at 27-28.)

26         Ultimately, Yellowcake's argument hinges on the Court finding a genuine dispute of

27  ownership still exists for the jury to resolve.  The Court already addressed ownership and

28  determined a genuine issue still exists regarding whether Morena's contributions rise to the level

21

of authorship and whether the Albums constitute "joint work" making Chavez, Vargas, and Torres co-authors and co-owners. Because a genuine dispute of ownership exists, the Court need not address Yellowcake's arguments concerning Morena's standing or Yellowcake's contention that "Hernandez and Colonize are entitled to summary judgment in their favor on Morena's counterclaim." (*See* Doc. 86 at 33-34.)[4] Ownership of a copyright vests initially in the author of the work, *see* 17 U.S.C. § 201(a), and the Court previously addressed the legal arguments relating to co-ownership and found genuine disputes as to copyright ownership remain for the jury to resolve. Summary judgment is precluded, and the Court **DENIES** Yellowcake's motion for summary judgment on Morena's claim for accounting.

### C. Injunctive Relief

Yellowcake also request the Court grant injunctive relief. A court may grant injunctive relief in a copyright infringement action to prevent or restrain further infringement of a copyright. 17 U.S.C. § 502(a); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.2d 1146, 1158 (9th Cir. 2007). Having found a genuine dispute of material fact regarding copyright ownership, Yellowcake is not entitled to such relief at this time. Yellowcake's request for injunctive relief is denied.

### CONCLUSION

The Court finds Morena has carried its burden in showing a genuine material dispute of fact, regarding ownership of the copyrighted Albums, still exists for the fact finder to resolve. Therefore, summary judgment is precluded, and Plaintiff Counter-defendants' motion for summary judgment is **DENIED**.

///

///

///

///

///

---

[4] Even still, the Court notes the circular reasoning proffered to oppose Hernandez and Colonize's liability. For example, in arguing contributory infringement Yellowcake contends Leon is liable for infringement damages as the principal and owner of Defendant Morena. Yet, here, the same reasoning yields the inverse. (*See* Doc. 86 at 34.) Nevertheless, such reasoning does not affect the Court's assessment as it has already concluded in sections prior that a genuine dispute as to copyright ownership remains for the jury to resolve.

1   **II.      DEFENDANT COUNTERCLAIMANT MORENA'S MOTION FOR**

2   **SUMMARY JUDGMENT[5]**

3       Morena moves for summary judgment or partial adjudication of Yellowcake's copyright

4   infringement, contributory infringement, and injunctive relief claims.  (*See* Doc. 87.)  Morena

5   argues that Yellowcake cannot maintain a claim for copyright infringement against defendants

6   because: (1) Yellowcake lacks standing; (2) Morena's "original contributions and its acquisition

7   of rights from Flores and Vargas" make Morena a joint owner in the Albums; and (3)

8   "Yellowcake has no provable damages." (*Id* at 12-16.)  Specifically, Morena contends Yellowcake

9   lacks standing to bring a claim against Morena because the "Assignment from Chavez" "does not

10  and cannot result in a transfer of exclusive rights in the copyright."  (*Id.* at 12.)  In arguing joint

11  ownership, Morena repurposes its prior legal arguments and asserts the same grounds for denying

12  Yellowcake's request for summary judgment (*id.* at 19).

13      Yellowcake opposes summary judgment asserting Morena's grounds for judgment are

14  "fatally flawed as a matter of fact and law."  (Doc. 91 at 14, "Defendants reason: (i) because

15  Chavez, Flores and Vargas allegedly co-owned the Albums when Yellowcake purchased the

16  rights in the Albums from Chavez, (ii) and because Flores and Vargas retained their rights in the

17  Albums, (iii) then the Asset Purchase Agreement between Chavez and Yellowcake could not

18  legally transfer any exclusive rights in the Albums to Yellowcake, and (iv) as Yellowcake lacks

19  any exclusive rights in the Albums Yellowcake has no standing to sue for infringement.".)  In

20  essence, Yellowcake argues Morena fails to demonstrate as a matter of law that they co-own the

21  albums via the alleged assignments (*id.* at 20).

22      **A.  Genuine Dispute as to Material Fact Exists**

23      The Court has reviewed the summary judgment record and notes both parties have

24  repurposed and incorporated prior legal arguments.  In ruling on Plaintiff Counter-defendants

25  Yellowcake's motion for summary judgment, the Court found Morena satisfied its burden of

26  ---

[5]  In resolving Counter-defendants' motion for summary judgment (Doc.86), the Court did not consider the additional arguments and facts asserted in any briefing relating to Morena's motion for summary judgment (Docs. 87, 91, 95).

27  The Court considered only arguments and material filed in support of and opposition of Counter-defendants' motion (Docs. 86, 92, 93, 94, 96).  The Court approaches Morena's motion for summary judgment in the same manner and

28  considers only the briefing filed in support and opposition of its motion.

1   showing a genuine dispute regarding whether the Albums constitute a joint work and whether

2   Bandmates Flores and Vargas and Defendant Morena are co-owners.  The dispute still exists;

3   thus, summary judgment is **DENIED**.

4                                                **CONCLUSION**

5          For reasons discussed, the Court finds a genuine dispute exists and precludes summary

6   judgment.  Defendant Counterclaimant Morena's motion for summary judgment is **DENIED**.

7                                                  **ORDER**

8          For the reasons set forth above, the Court **ORDERS**:

9          1.   Plaintiff Counter-defendants' Motion for Summary Judgment (Doc. 86) is DENIED.

10         2.   Defendant Counterclaimant's Motion for Summary Judgment (Doc. 86) is DENIED.[6]

11

12   IT IS SO ORDERED.

13      Dated:   **June 26, 2025**

         UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

[6] The Court anticipates issuing rulings on the remaining dispositive motions within the next few weeks. At that time, the Court will address the schedule for the remainder of the action.